

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 10, 2020**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **DEWANE WHITTEN,** | **CASE NO. 19-00467-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| **LARRY AND REBECCA CLAY** | **PLAINTIFFS** |
| **VS.** | **ADV. PROC. 19-00038-NPO** |
| **DEWANE WHITTEN** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER
### <u>GRANTING MOTION FOR SUMMARY JUDGMENT</u>

This matter came before the Court on the Motion for Summary Judgment (the "Summary Judgment Motion") (Adv. Dkt. 19)[1] filed by Larry Clay ("Larry Clay") and Rebecca Clay (collectively, with Larry Clay, the "Plaintiffs"); the Memorandum Brief in Support of Motion for

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. ____)"; (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. ____)"; and (3) citations to docket entries in the chapter 7 bankruptcy case commenced by George L. Whitten ("George Whitten") in Case No. 16-00338-NPO (the "George Whitten Bankruptcy Case") are cited as "(16-00338-NPO Dkt. ___)".

Summary Judgment (the "Summary Judgment Brief") (Adv. Dkt. 20) filed by the Plaintiffs; the Material Facts and Proceedings (the "Summary Judgment Material Facts") (Adv. Dkt. 21) filed by the Plaintiffs; the Defendant's Response to the Plaintiffs' Motion for Summary Judgment (the "Response") (Adv. Dkt. 23) filed by the debtor, Dewane Whitten (the "Defendant"); the Defendant's Memorandum Brief in Opposition to Motion for Summary Judgment (the "Brief in Opposition to Summary Judgment Motion") (Adv. Dkt. 24) filed by the Defendant; the Defendant's Response to the Plaintiffs' Material Facts and Proceedings (the "Response to Summary Judgment Material Facts") (Adv. Dkt. 25) filed by the Defendant; and the Plaintiffs' Reply in Support of Motion for Summary Judgment (the "Reply") (Adv. Dkt. 26) filed by the Plaintiffs in the Adversary.  The Plaintiffs attached eight (8) exhibits, marked as Exhibits "1" through "8" (Adv. Dkt. 19-1 to 19-8), to the Summary Judgment Motion.  The Defendant attached two (2) exhibits, marked as Exhibits "A" and "B" (Adv. Dkt. 23 at 7-21), to the Response.

## Jurisdiction

The Court has jurisdiction over the subject matter of and the parties to this proceeding under 28 U.S.C. § 1334.  This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O).  Notice of the Hearing was proper under the circumstances.

## Facts[2]

The facts at issue in the Adversary arise from a verbal agreement between the Plaintiffs and Defendant regarding the purchase of one hundred and fifty (150)-acres of land in Pontotoc County, Mississippi (the "Property").  After nearly two years, their ongoing business relationship ended when the Plaintiffs discovered a judgment lien on the Property.  Neither the Defendant nor

---

[2] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

her husband, George Whitten, informed the Plaintiffs of the lien.  The Plaintiffs first learned of its existence after George Whitten disclosed it in the George Whitten Bankruptcy Case.  Unless otherwise noted, the facts below are the findings of fact of the Circuit Court of Pontotoc County, Mississippi (the "State Court") in the Summary Judgment Order Granting Plaintiffs' Motion for Summary Judgment (the "State Court Summary Judgment Order") (Adv. Dkt. 19-4).

## A.    Verbal Agreement to Purchase the Property

During the relevant period, the Property was owned jointly by the Defendant and George Whitten and was subject to a mortgage held by Citizens Bank of Philadelphia ("Citizens Bank"). On July 8, 2014, a judgment in the approximate amount of $2,800,000.00 (the "$2.8 Million Judgment) was entered against George Whitten.  In August of 2014, the Plaintiffs entered into negotiations with the Defendant for the purchase of the Property.  (Adv. Dkt. 19-4 at 1).  During these negotiations, the Defendant represented to Larry Clay that she possessed "good title" to the Property and could convey title of the Property.  (Adv. Dkt. 19-4 at 1).  Larry Clay apparently was aware that Citizens Bank held a mortgage on the Property but was unaware of the $2.8 Million Judgment.

Larry Clay agreed to pay the Defendant $2,300.00 per acre for a total purchase price of $345,000.00.  (Adv. Dkt. 19-4 at 1).  According to the Plaintiffs, the Defendant agreed to finance the purchase at an interest rate of six percent (6%) per annum.  (Adv. Dkt. 19-1 at 2).  The Defendant denies that she ever agreed to finance the purchase.  (Adv. Dkt. 25 at 1).  Instead, she contends that the parties agreed that Larry Clay either would obtain his own financing or assume the mortgage held by Citizens Bank.  (Adv. Dkt. 25 at 2).  Whether the transaction gave rise to an option to buy the Property or an agreement to purchase the Property, it is undisputed that Larry

Clay agreed to pay the Defendant an initial payment of $1,000.00 followed by ongoing monthly payments of $2,000.00 beginning September 4, 2014.  (Adv. Dkt. 19-4 at 1).

On September 4, 2014, Larry Clay drafted, signed, and dated a written contract reflecting the parties' agreement and mailed it to the Defendant or George Whitten along with a check in the amount of $3,000.00.  The written agreement apparently was never signed by the Defendant, and, thus, there was never a written contract for the sale of the Property or a written option agreement.

On the same day that Larry Clay sent the written agreement and $3,000.00 to the Defendant, September 4, 2014, the $2.8 Million Judgment was enrolled in the Judgment Roll of Pontotoc County, Mississippi, and became a lien upon the Property.  *See* MISS. CODE ANN. § 11-7-191.  The Plaintiffs, who were unaware of the judgment lien, continued making monthly payments of $2,000.00 to the Defendant.  (Adv. Dkt. 19-1 at 2).  The Defendant deposited the $1,000.00 initial payment and the $2,000.00 monthly payments into her bank account for a total of $43,000.00.  (Adv. Dkt. 19-4 at 1).

## B.    George Whitten Bankruptcy Case

The Plaintiffs stopped making payments to the Defendant in June of 2016 when they learned that George Whitten had filed a voluntary petition for relief under chapter 7 of the U.S. Bankruptcy Code (16-00338-NPO Dkt. 1) on February 5, 2016.  In Schedule D: Creditors Who Have Claims Secured by Property (16-00338-NPO Dkt. 16 at 24-25), George Whitten disclosed the $2.8 Million Judgment and its enrollment in Pontotoc County, Mississippi.  (Adv. Dkt. 19-4 at 2; 16-00338-NPO Dkt. 16 at 24-25).

On October 26, 2016, the Plaintiffs' attorney sent a letter to the Defendant requesting that the parties finalize the purchase of forty-four (44) acres of the Property, which they believed was owned solely by the Defendant, in return for the $43,000.00 paid to the Defendant to date for the

entire Property. (Adv. Dkt. 19-1 at 7). The Defendant acknowledged that she received the letter but did not respond. (Adv. Dkt. 19-4 at 2). According to the Defendant, she and George Whitten jointly owned the entire Property, and her name appeared as the sole owner of the forty four (44) acres because of a scrivener's error. (Adv. Dkt. 8 at 2).

## C.     Foreclosure Sale of Property

The Defendant stopped paying the mortgage on the Property to Citizens Bank when the Plaintiffs stopped paying her. On December 15, 2016, Citizens Bank foreclosed and sold the Property to a third party. (Adv. Dkt. 19-4 at 2). On January 13, 2017, the Plaintiffs' attorney sent a second letter to the Defendant demanding that she immediately return of $43,000.00 paid towards the purchase price of the Property. (Adv. Dkt. 19-1 at 8). The Defendant did not respond to the demand. (Adv. Dkt. 19-4 at 2).

## D.     State Court Action

On January 31, 2017, the Plaintiffs filed a Complaint (the "State Court Complaint") in the State Court in Cause No. 2017-034R(PO) (the "State Court Action") against the Defendant. (Adv. Dkt. 19-1). In the State Court Complaint, the Plaintiffs asserted common-law causes of action against the Defendant for conversion, breach of contract, equitable estoppel, unjust enrichment, and fraud. (Adv. Dkt. 19-1). On April 18, 2017, the Defendant, represented by counsel, filed an Answer (the "State Court Answer") (Adv. Dkt. 19-2) to the State Court Complaint.

### 1.     State Court Summary Judgment Order

On September 18, 2018, the Plaintiffs filed a motion for summary judgment pursuant to Rule 56 of the Mississippi Rules of Civil Procedure (the "State Court Motion for Summary Judgment") seeking judgment as a matter of law on their claims for conversion, unjust enrichment, and fraud. (Adv. Dkt. 19-4 at 2). The Defendant failed to file a response even though the State

Court communicated "several requests for the Defendant to respond." (Adv. Dkt. 19-4 at 3). On October 22, 2018, a week before the trial was scheduled to begin, the Defendant filed the Motion for Continuance (the "State Court Motion to Continue") (Adv. Dkt. 19-3). In the State Court Motion to Continue, the Defendant requested additional time to respond to the State Court Motion for Summary Judgment and to prepare for the trial. (Adv. Dkt. 19-4 at 3). On October 24, 2018, the State Court entered the State Court Summary Judgment Order denying the State Court Motion to Continue and holding that the Plaintiffs had established claims against the Defendant for conversion, unjust enrichment, and fraud as a matter of law. (Adv. Dkt. 19-4 at 6). Because the Plaintiffs rely on the findings of fact set forth in the State Court Summary Judgment Order as the basis for their dischargeability claims under 11 U.S.C. § 523(a)(2)(A), the Court summarizes the State Court's decision on each claim.

(a)      <b>Conversion Claim—State Law</b>

Citing *Covington County Bank v. Magee*, 177 So. 3d 826 (Miss. 2015), the State Court noted that a conversion claim under Mississippi law "requires proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand" and, moreover, that "[w]here one acquires possession of the property in a lawful manner . . . his refusal to relinquish possession or control over the property after a demand by plaintiff gives rise to the action." *Id.* at 829. Based on the facts presented by the Plaintiffs, the State Court found that "the Plaintiffs paid the Defendant monthly for almost two years under the impression that they were purchasing real estate." (Adv. Dkt. 19-4 at 3-4). Yet when the Plaintiffs demanded that the Defendant return their money, she

refused to do so.  The State Court found that the Defendant's refusal to return the money amounted to a conversion.  (Adv. Dkt. 19-4 at 3-4).

**(b)      Unjust Enrichment Claim—State Law**

With respect to the Plaintiffs' claim of unjust enrichment, the State Court noted that "unjust enrichment applies when one party has mistakenly paid another party."  *Willis v. Rehab Sols., PLLC*, 82 So. 3d 583, 588 (Miss. 2012).  More specifically, a claim for unjust enrichment "applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain."  *Id.* Although the written contract drafted by Larry Clay was never signed by the Defendant and, therefore, no enforceable contract existed for the sale of the Property, the Plaintiffs nevertheless paid the Defendant $2,000.00 per month for the Property for nearly two (2) years.  (Adv. Dkt. 19-4 at 4).  The State court found that the Defendant accepted these payments knowing that the $2.8 Million Judgment encumbered the Property.  (Adv. Dkt. 19-4 at 4).  For these reasons, the State Court ruled that "the Defendant has been unjustly enriched."  (Adv. Dkt. 19-4 at 4).

**(c)      Fraud Claim—State Law**

Finally, as to the Plaintiffs' fraud claim, the State Court noted that in Mississippi, the elements of a claim for common-law fraud are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *Watson Labs., Inc. v. Mississippi*, 241 So. 3d 573, 584 (Miss. 2018).  The State Court found that the Plaintiffs had established these elements of fraud by clear and convincing evidence based on the following summary of facts:

The Defendant represented to the Plaintiffs that she would be able to transfer the Property to them.  The Property, however, was subject to the $2.8 Million Judgment entered on July 8, 2014 and enrolled in Pontotoc County, Mississippi on September 4, 2014, during the same period the Defendant agreed to sell the Property to the Plaintiffs for $345,000.00.  Although the Defendant claimed to own good title to the Property, she failed to inform the Plaintiffs that the Property was encumbered by the $2.8 Million Judgment.  George Whitten confirmed that he was aware of the $2.8 Million Judgment lien on the Property and that he spoke to the Defendant about her negotiations with the Plaintiffs.  When the $2.8 Million Judgment was enrolled on September 4, 2014, Defendant admitted that she declined to inform the Plaintiffs of the judgment lien on the Property.  Indeed, the Plaintiffs' first payment to the Defendant was made on the same day the $2.8 Million Judgment was enrolled.  In the two years following their verbal agreement, the Defendant also declined to inform the Plaintiffs about the judgment lien.  The Plaintiffs first became aware of the $2.8 Million Judgment in June of 2016.  Until then, the Plaintiffs relied on the Defendant's ability to convey good title and invested $43,000.00 for the purchase of the Property.  The Plaintiffs had a right to rely on the Defendant's false representation because the Defendant and George Whitten had extensive experience in real estate transactions.  The Defendant used her special knowledge and expertise to take advantage of the Plaintiffs.  Only when the Plaintiffs independently discovered that the Property was subject to a judgment lien did they stop making payments to the Defendant.  (Adv. Dkt. 19-4 at 5-6).  Based on the above factual summary, the State Court found that the Defendant intentionally defrauded the Plaintiffs of $43,000.00.  (Adv. Dkt. 19-4 at 6).

2.      **State Court Final Judgment on Liability and Damages**

On October 29, 2018, the State Court entered the Final Judgment Pursuant to Rule 54 as to Liability, Compensatory Damages, Prejudgment Interest, and Post Judgment Interest and Order on Punitive Damages and Attorney's Fees (the "State Court Final Judgment on Liability and Damages"). (Adv. Dkt. 19-5 at 1). In the State Court Final Judgment on Liability and Damages, the State Court awarded the Plaintiffs $43,000.00 in compensatory damages and $5,901.26 in prejudgment interest for a total of $48,901.46,[3] plus post-judgment interest at the rate of eight percent (8%) interest per annum. (Adv. Dkt. 19-5). Because the Defendant was liable for fraud, the State Court provided the Plaintiffs an opportunity to file a motion for an award of punitive damages and/or attorney's fees. (Adv. Dkt. 19-5 at 2). Instead, the Plaintiffs filed a motion seeking the State Court's approval to present the issue of punitive damages to a jury. (Adv. Dkt. 19-6). The Defendant opposed the motion. Before the matter could be resolved, the State Court Action was stayed by the Defendant's commencement of the Bankruptcy Case.

E.      **Bankruptcy Case**

On February 6, 2019, the Defendant filed a voluntary petition under chapter 7 of the U.S. Bankruptcy Code. (Bankr. Dkt. 1). The Defendant identified the State Court Final Judgment on Liability and Damages in her statement of financial affairs as a "collection judgment." (Bankr. Dkt. 27 at 35).

On March 5, 2019, the Plaintiffs filed the Motion of Creditors Larry and Rebecca Clay to Lift Stay for Purposes of Allowing Circuit Court of Pontotoc County to Further Rule (the "Stay Motion") (Bankr. Dkt. 19). In the Stay Motion, the Plaintiffs asked the Court to grant relief from

---

[3] The State Court Final Judgment on Liability and Damages calculates the sum of the $43,000.00 in compensatory damages and $5,901.26 in prejudgment interest as $48,901.46. (Adv. Dkt. 19-5). The parties did not acknowledge this error, but the Court notes the $0.20 discrepancy.

the automatic stay to allow the State Court to rule on the issues of punitive damages and/or attorney's fees. (Bankr. Dkt. 19 at 2). The Plaintiffs also filed the Motion of Creditors Larry and Rebecca Clay to Extend the Time to Object to Discharge (the "Motion to Extend") (Bankr. Dkt. 35).[4] The Court set a hearing on the Stay Motion and the Motion to Extend for April 15, 2019. (Bankr. Dkt. 41).

After the hearing, the Court entered the Order Granting Motion to Lift Stay [Dkt 19] and Granting Motion to Extend Time to Object to Discharge [Dkt. 35] (the "Stay Order") (Bankr. Dkt. 61) in the Bankruptcy Case. In the Stay Order, this Court granted the Plaintiffs relief from the automatic stay to allow the State Court to rule on the issues of punitive damages and attorney's fees. (Bankr. Dkt. 61). The Court instructed the Plaintiffs, however, to "return to [the bankruptcy court] for a determination of dischargeability issues under § 523(a), if any." (Bankr. Dkt. 61). The Court also extended the deadline to object to the Defendant's discharge to October 2, 2019. (Bankr. Dkt. 61).

## F.    Return to State Court and State Court Final Judgment on Fees

On September 23, 2019, the parties entered the Agreed Order on Punitive Damages and Attorney Fees (the "State Court Agreed Order") (Adv. Dkt. 19-7) in the State Court Action. The State Court Agreed Order awarded the Plaintiffs $58,146.69, consisting of $52,133.75 in attorney's fees and $6,012.94 in expenses. (Adv. Dkt. 19-7). The Agreed Order also stated that "[t]hese amounts may be included in a Proof of Claim filed in the Defendant's Chapter 7 bankruptcy case." (Adv. Dkt. 19-7). On that same day, the State Court entered the Final Judgment Pursuant to Rule 54 as to Punitive Damages and Attorney Fees (the "State Court Final Judgment on Fees" or,

---

[4] The Defendant filed the Debtor's Response to Larry and Rebecca Clay's Motion to Extend the Time to Object to Discharge but did not object to "a reasonable extension of the discharge deadline." (Bankr. Dkt. 58 at 1).

together with the State Court Final Judgment on Liability and Damages, the "State Court Final Judgments") (Adv. Dkt. 19-8).  The State Court Final Judgment on Fees awarded the Plaintiffs $58,146.69 in "addition to the amounts awarded pursuant to [the State Court Final Judgment on Liability and Damages]."  (Adv. Dkt. 19-8).  The Defendant did not appeal the State Court Final Judgments.  (Adv. Dkt. 23 at ¶ 3).  On September 26, 2019, the Plaintiffs filed a proof of claim (Claim 6-1) in the amount of $110,200.98 in the Bankruptcy Case.

## G.   Adversary

On October 2, 2019, the Plaintiffs filed the Complaint to Determine Dischargeability of a Debt (the "Adversary Complaint") (Adv. Dkt. 1).  In the Adversary Complaint, the Plaintiffs outlined the State Court's findings of fact in the State Court Summary Judgment Order and argued that the State Court Summary Judgment Order and State Court Final Judgments "have preclusive effect in establishing the elements required under [11 U.S.C.] § 523(a)(2)(A) so as to allow this Court to determine the non-dischargeability of [the Defendant's] money judgment debt owed to the [Plaintiffs]."  (Adv. Dkt. 1 at 4).  The Plaintiffs alternatively asserted a claim under 11 U.S.C. § 523(a)(2)(A) for a debt arising by false representation and/or actual fraud based on the same set of facts asserted in the State Court Action. (Adv. Dkt. 1 at 5).

On November 20, 2019, the Defendant filed the Answer and Defenses to the Complaint to Determine Dischargeability of Debt (the "Adversary Answer") (Adv. Dkt. 8).  The Defendant admitted most of the allegations in the Adversary Complaint but adopted a different narrative regarding the nature of the parties' transaction.  (Adv. Dkt. 8 at 2-3).  The Debtor denied that she falsely or fraudulently represented to the Plaintiffs that she could convey title to the Property.  She asserted that she remitted the payments of $2,000.00 per month to Citizens Bank for payment of the mortgage on the Property, which benefitted Larry Clay because it preserved his opportunity to

purchase the Property.  (Adv. Dkt. 8 at 4).  She insisted that the Plaintiffs could have purchased the Property from Citizens Bank at the foreclosure sale or later from the entity who purchased the Property at the foreclosure sale.  (Adv. Dkt. 8 at 5).

On May 19, 2020, the Plaintiffs filed the Summary Judgment Motion,[5] asserting that they are entitled to summary judgment as a matter of law that the debt created by the State Court Final Judgments is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  (Adv. Dkt. 19 at 2).   In support of their position, the Plaintiffs attached to the Summary Judgment Motion the following pleadings filed in the State Court Action:  (1) the State Court Complaint; (2) the State Court Answer; (3) the State Court Motion to Continue; (4) the State Court Summary Judgment Order; (5) the State Court Final Judgment on Liability and Damages; (6) the Defendant's Response to Plaintiffs' Motion Seeking Court Approval to Present Issue of Punitive Damages to Jury (Adv. Dkt. 19-6); (7) the State Court Agreed Order; and (8) the State Court Final Judgment on Fees.  The Plaintiffs also filed the Summary Judgment Material Facts which consists largely of a recitation of the facts that the State Court deemed undisputed.  In the Summary Judgment Brief, the Plaintiffs argue that these undisputed facts establish the elements of their dischargeability claims for a false representation and actual fraud under 11 U.S.C. § 523(a)(2).

---

[5] The Plaintiffs previously filed a Motion for Summary Judgment (Adv. Dkt. 12) on April 23, 2020 that the Court denied on procedural grounds in its Order Denying Motion for Summary Judgment (Adv. Dkt. 15).  On May 15, 2020, the Plaintiffs filed the Motion to Amend Scheduling Order Dispositive Motion Deadline (the "Motion to Amend") (Adv. Dkt. 16) and the Memorandum in Support of Motion to Amend Scheduling Order Dispositive Motion Deadline (Adv. Dkt. 17).  The deadline for filing dispositive motions in the Scheduling Order (Adv. Dkt. 9) expired on April 27, 2020, before entry of the Court's Order Denying Motion for Summary Judgment.  (Adv. Dkt. 15).  The Plaintiffs asked the Court to amend the Scheduling Order to allow them to file the Summary Judgment Motion, the Summary Judgment Material Facts, and the Summary Judgment Brief (collectively, the "Proposed Pleadings").  (Adv. Dkt. 18).  The Court entered the Order Granting Motion to Amend Scheduling Order Dispositive Motion Deadline (Adv. Dkt. 18) allowing the Plaintiffs five (5) days to file the Proposed Pleadings.

In the Response, the Defendant asserts that "a genuine issue of material fact exists with regard to the [*sic*] whether [the] actions of the [Defendant], when considered in conjunction with the actions of Larry Clay, give rise to the alleged non-dischargeable claims." (Adv. Dkt. 23 at 2). In support of her position, the Defendant attached to the Response: (1) the Affidavit (Adv. Dkt. 23 at 7-17) of LaDonna M. Griggs (the "Griggs Affidavit") and her own affidavit (the "Defendant Affidavit") (Adv. Dkt. 23 at 18-21). The Defendant also filed the Response to Summary Judgment Material Facts and the Brief in Opposition to Summary Judgment Motion. The Plaintiffs filed the Reply.

## Discussion

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To prevail on a motion for summary judgment, a party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" then the court shall grant the motion for summary judgment. *Am. Express Centurion Bank v. Valliani (In re Valliani)*, No. 13-4030, 2014 WL 345700, at *2-3

(Bankr. E.D. Tex. Jan. 30, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted)).

The movant carries the burden "of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp.,* 477 U.S. at 323. The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]here are two (2) elements that must be met in order for summary judgment to be appropriate: (1) there must be no genuine dispute of the material fact; and (2) the undisputed facts are such that the movant is entitled to judgment as a matter of law." *Greenpoint AG, LLC v. Kent (In re Kent)*, 554 B.R. 131, 139 (Bankr. N.D. Miss. 2016). The court looks to the substantive law to determine if a fact is material. *Id.* at 139-40.

If the movant meets the initial burden, "the burden of production shifts to the nonmovant who then must rebut the presumption by coming forward with specific facts, supported by the evidence in the record, upon which a reasonable factfinder could find a genuine fact issue for trial." *Quackenbush v. U.S. Dep't of Educ. (In re Quackenbush)*, No. 16-00044-NPO, 2018 WL 4056993, at *3 (Bankr. S.D. Miss. Aug. 24, 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Summary judgment is proper where "the nonmoving party has

failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

## B.      Dischargeability Standard

Usually, "all debts arising prior to the filing of the bankruptcy petition will be discharged." *United States v. Coney*, 689 F.3d 365, 371 (5th Cir. 2012) (citing *In re Bruner*, 55 F.3d 195, 197 (5th Cir. 1995)).  Although this is the general rule, "Congress has provided that certain types of liabilities are excepted from the general rule of discharge" in order to "ensure that the Bankruptcy Code's 'fresh start' policy is only available to 'honest but unfortunate debtor[s].'"  *Id.* (citations omitted).  "The statutory provisions [in 11 U.S.C. § 523(a)][6] governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debt . . . ."  *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).  In order to prevail, the party asserting the exception to discharge must prove that the debt is nondischargeable by a preponderance of the evidence.  *Id.* at 291.  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995) (citing *Grogan*, 498 U.S. at 286).  A fact is proven by a preponderance of the evidence if the Court finds it more likely than not that the fact is true.  *EPA v. Sequo Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909-10 (5th Cir. 1993).  "[E]xceptions to discharge must be strictly construed against the creditor and liberally construed in favor of the debtor."  *Country Credit, LLC v. Kornegay (In re Kornegay)*, Adv. No. 11-00042-KMS, 2012 WL 930818, at *3 (Bankr. S.D. Miss. Mar. 19, 2012) (citing *Lanier v. Futch (In re Futch),* Adv. No. 09–00144–NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011)); *see Mammel v. Pierce (In re Pierce),* Adv. No. 10–3408, 2011 WL 2312037, at *1 (Bankr. N.D. Tex. June 10, 2011); *Fezler v. Davis (In re Davis),* 194 F.3d 570,

---

[6] Hereinafter, all code sections refer to the Code found at Title 11 of the United State Code, unless otherwise noted.

573 (5th Cir. 1999); *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

### 1.      Section 523(a)(2)(A)

In the Adversary Complaint, the Plaintiffs seek a finding of nondischargeability of the State Court Final Judgments based on § 523(a)(2)(A).  Section 523(a)(2)(A) excepts certain debts from discharge if the debt was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."   11 U.S.C. § 523(a)(2)(A).     Section 523(a)(2)(A) encompasses three separate grounds for non-dischargeability, all of which apply to "debts obtained by frauds involving moral turpitude or intentional wrong."  *First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 813 (5th Cir. 1992).  In defining the elements of non-dischargeability under § 523(a)(2)(A), the Fifth Circuit has distinguished the proof required for false pretenses, false representations, and actual fraud. *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 402 (5th Cir. 2001).  A claim under 11 U.S.C. § 523(a)(2) based on a false representation must include an actual misrepresentation by the debtor, but a claim based on false pretenses may involve misleading conduct without a false representation.  *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015).  A claim premised on actual fraud likewise encompasses forms of fraud that can be accomplished without a false representation.  *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 136 S. Ct. 1581, 1586 (2016).  The Plaintiffs seek summary judgment on the ground that the debt evidenced by the State Court Final Judgments is nondischargeable because of the Defendant's false representation and/or actual fraud.

### a.      False Representation—§ 523(a)(2)(A)

To obtain a judgment that a debt is nondischargeable for a false representation, the misrepresentation must be "(1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party." *Hancock Bank v. Harper (In re Harper)*, 475 B.R. 540, 547 (Bankr. S.D. Miss. 2012).  It is not necessary that the false representation be made in writing for the debt to be excepted from discharge.  *Md. Central Collection Unit v. Johnson (In re Johnson)*, No. 19-00183, 2019 WL 4164860, at *5 (Bankr. D. Md. Aug. 30, 2019).  The false representation giving rise to the debt must have been made knowingly and fraudulently.  A debtor's silence regarding a material fact may qualify under § 523(a)(2)(A).  4 COLLIER ON BANKRUPTCY ¶ 523.08[d] (16th ed. 2019).  "The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach.  A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions." *Id.*  Moreover, a misrepresentation of the debtor's intention to perform contractual duties may be a false representation if the debtor had no intention of performing any of the obligations under the contract.  *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 484 (5th Cir. 1992).

### b.      Actual Fraud—§ 523(a)(2)(A)

Prior to the U.S. Supreme Court's decision in *Ritz*, the Fifth Circuit in *RecoverEdge* held that the elements of actual fraud pursuant to § 523(a)(2)(A) required proof that: (1) the debtor made representations; (2) at the time they were made, the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on such representations; and (5) the creditor sustained losses as a proximate result of the representation. *RecoverEdge L.P.*, 44 F.3d at 1293.  In *Ritz*, the Supreme Court held that

"actual fraud" in § 523(a)(2)(A) can be accomplished without a false representation from a debtor to a creditor. *In re Ritz*, 136 S. Ct. at 1585, 1590. The Supreme Court thus expanded the definition of actual fraud to include other forms of fraudulent conduct but declined to adopt a definition of fraud "for all times and circumstances." *Id.* For a claim of actual fraud based on a false representation, however, the elements set forth in *RecoverEdge* remain applicable.

## C.   *Rooker-Feldman* Doctrine and Collateral Estoppel

The Plaintiffs assert that the State Court's findings in the State Court Summary Judgment Order as to their common-law fraud claim supports their nondischargeability claims under § 523(a)(2)(A) without the need for any additional testimony or other evidence. Indeed, all of the exhibits attached by the Plaintiffs to the Summary Judgment Motion originated in the State Court Action. The Defendant, in contrast, maintains that the Court must consider certain additional facts "not discernible" from the record in the State Court Acton in determining the dischargeability of the State Court Final Judgments. The Defendant attached to the Response the Defendant Affidavit and the Griggs Affidavit, both of which include facts not considered by the State Court.

In the Defendant Affidavit, the Defendant testified that neither she nor George Whitten ever agreed to owner-finance the sale of the Property to Larry Clay and that any owner-financing arrangement would have been impossible because of the mortgage held by Citizens Bank. The Defendant also testified that in February of 2017 George Whitten attempted to arrange the sale of the Property from its current owner to Larry Clay for the same total purchase price of $345,000.00.

In the Griggs Affidavit, the affiant, LaDonna M. Griggs ("Griggs"), testified that she and Larry Clay were married on January 19, 2013 and were granted a divorce on December 15, 2014. Griggs further testified that in connection with their divorce, they entered into a property settlement agreement that did not reference any ownership interest in the Property. The Defendant maintains

that Griggs' testimony lends credence to her position that the parties never contemplated an owner-financing arrangement. The facts presented in the Defendant Affidavit and the Griggs Affidavit, according to the Defendant, raise a genuine dispute that precludes summary judgment in favor of the Plaintiffs. The Court, therefore, considers as a preliminary matter the applicability of the closely-related doctrines of *Rooker-Feldman*[7] and collateral estoppel.

The ultimate determination of the dischargeability of a debt under bankruptcy law rests within the exclusive jurisdiction of the bankruptcy court, but the doctrines of *Rooker-Feldman* and collateral estoppel prevent a bankruptcy court from reconsidering the same facts and issues "actually and necessarily" litigated by a state court. *Gupta v. E. Idaho Tumor Inst., Inc. (In re Gupta)*, 394 F.3d 347, 349-50 (5th Cir. 2004); *Gauthier v. Cont'l Diving Servs. Inc.*, 831 F.2d 559, 561 (5th Cir. 1987). Thus, even though non-dischargeability is "independent of the issue of the underlying claim's validity, which is determined by state law," these doctrines can provide an alternative basis to satisfy the elements of a non-dischargeability claim. *Grogan*, 498 U.S. at 280; *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005). The opposite is also true—the elements of a nondischargeable claim "that have not been actually and necessarily litigated or that are not discernible from the record, must also be determined by [the bankruptcy court] after hearing all relevant evidence." *Harold V. Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1256 (5th Cir. 1984).

The *Rooker-Feldman* doctrine bars a bankruptcy court from reviewing a state court judgment because federal courts, as courts of original jurisdiction, lack the power to modify or nullify final judgments of state courts. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457,

---

[7] The doctrine derives from two (2) U.S. Supreme Court decisions, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

462 (5th Cir. 2004) (quotation omitted).  Collateral estoppel or issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  As to the preclusive effect of a state court judgment under the principle of collateral estoppel, federal courts must apply whatever preclusive effect a court of the same state that rendered the judgment would afford that judgment.  *Shimon v. Sewerage & Water Bd. of New Orleans*, 565 F.3d 195, 199 (5th Cir. 2009) (citing *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1980)).  Because the judgment was rendered by a Mississippi court, this Court's inquiry begins with a review of the Mississippi rules of issue preclusion.  *Gober v. Terra Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996).

Under Mississippi law, a party is collaterally estopped from raising an issue that was: "(1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action."  *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d 836, 845 (Miss. 2016) (citation omitted).  Moreover, for collateral estoppel to apply, the first action must have ended in a final judgment on the merits.  *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087 (Miss. 2009).  Summary judgments have been deemed to be judgments "on the merits" for purposes of issue preclusion.  *Beene v. Feguson Automotive, Inc.*, 37 So. 3d 695 (Miss. Ct. App. 2010).

## D.     Application of Principles

The record demonstrates that the Plaintiffs and Defendant were opposing parties in the State Court Action and the transaction regarding the sale of the Property was essential to the entry of the State Court Final Judgments against the Defendant, as it is to any judgment rendered in the Adversary.  The State Court entered the State Court Summary Judgment Order adopting the facts

presented by the Plaintiffs which the Defendant did not dispute because of her failure to respond to the State Court Summary Judgment Motion.  (Adv. Dkt. 19-4 at 1).  The State Court relied on these finding of facts to render the State Court Final Judgment on Liability and Damages.  (Adv. Dkt. 19-5).  The parties resolved the remaining issues of punitive damages and attorneys' fees in the State Court Agreed Order.  (Adv. Dkt. 19-7).  Based on the State Court Agreed Order, the State Court entered the State Court Final Judgment on Fees.  (Adv. Dkt. 19-8).  The Defendant did not appeal the State Court Final Judgments, and they became final.[8]

The Defendant asserts that the State Court Summary Judgment Order was effectively a default judgment that failed to consider numerous significant facts.  (Adv. Dkt. 24 at 4).    In Mississippi, however, the doctrine of collateral estoppel applies to a previous default judgment "where personal jurisdiction of a defendant has been obtained."  *Sanders v. Nunley (In re Nunley)*, 237 B.R. 907, 912-13 (Bankr. N.D. Miss 1999).  In that regard, the Court notes that the Defendant was represented by counsel during the State Court Action, filed the State Court Answer, and never contested personal jurisdiction.

In the State Court Summary Judgment Order, the State Court discussed the Defendant's failure to file a response to the State Court Motion for Summary Judgment.  The State Court made "several requests for the Defendant to respond."  (Adv. Dkt. 19-3).  Then, on October 22, 2018, a week before the State Court Action was scheduled to begin, the Defendant filed the State Court Motion to Continue requesting "additional time to respond to the motion for summary judgment and to prepare for trial [but] declined to express that additional discovery was needed to respond to the motion for summary judgment pursuant to M.R.C.P. 56(f)."  (Adv. Dkt. 19-3).  The State Court denied the State Court Motion to Continue and entered the State Court Summary Judgment

---

[8] No one contests the finality of the State Court Final Judgments.

Order on October 24, 2018.  The Defendant did not appeal the State Court Final Judgments.  The Defendant had a meaningful opportunity to participate in the State Court Action but failed to do so.  Accordingly, the Court finds that the principle of collateral estoppel applies to the State Court Summary Judgment Order.

The Court next considers whether the elements for false representation and/or actual fraud under § 523(a)(2) are identical to the elements for common-law fraud on which the State Court Final Judgments were premised.  Although collateral estoppel requires that the issue has been "actually litigated," there is no requirement that a court make a specific finding on the issue.  If a decision on the issue was necessary or essential to the judgment, the decision on the issue will be given preclusive effect.  In that regard, an issue is essential or necessary to the judgment if the judgment could not have been rendered without a decision on the particular issue.  *Miss. Emp't Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist. of Neshoba Cty.*, 437 So. 2d 388, 396 (Miss. 1983).

### 1.    Defendant's False Representations

As noted previously, for a debt to be excepted from discharge under § 523(a)(2) for a false representation, the misrepresentation must be "(1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party."  *Harper*, 475 B.R. at 547.  In the State Court Summary Judgment Order, the State Court found that the Defendant represented to the Plaintiffs that she possessed title to the Property when she knew about the $2.8 Million Judgment but declined to inform the Plaintiffs of the judgment lien on the Property.  The Defendant's misrepresentations to Larry Clay regarding her ability to transfer title of the Property—when the "Plaintiffs' first payment to the Defendant happened to be the same day the

over two million dollar judgment was enrolled in Pontotoc County"—led the State Court to hold

that the Defendant's false representations were knowingly and fraudulently made.

The State Court also found that the Plaintiffs had a right to rely on the Defendant's

misrepresentation that she had the ability to convey good title to the Property.  The State Court

compared the Defendant's experience in multiple real estate transactions with the Plaintiffs' lack

of such knowledge and expertise.  The State Court additionally noted that in Mississippi the "right

to rely on a party can be accomplished simply because 'she is the party he was doing business

with.'"  (Adv. Dkt. 19-3 at 6) (citing *Holland v. Mayfield*, 826 So. 2d 664, 675 (Miss. 1999)).  The

Court finds that the elements that the Plaintiffs must prove to establish a false representation claim

under § 523(a)(2)(A) mirror those for common-law fraud that the Plaintiffs proved in the State

Court Action and, thus, establish the Plaintiffs' nondischargeability claim.

The Defendant offers her own testimony and the testimony of Griggs to support her

contention that the verbal agreement to sell the Property never included any owner-financing

component.  (Adv. Dkt. 23 at 2-3).  Her allegations, however, directly conflict with the State

Court's findings of fact that "[t]he Defendant represented that she . . . could convey title to the

Plaintiffs" and that "[t]he negotiated agreement settled for the Plaintiffs to pay for the land at . . .

($2,300.00) an acre, a total purchase price of . . . ($345,000.00) with a six percent (6%) interest."

(Adv. Dkt. 19-4 at 1).  To consider the Defendant Affidavit and Griggs Affidavit would require

the Court to revisit issues actually litigated by the State Court.  The Defendant insists that the Court

may consider these facts because they are not discernible from the record in the State Court Action.

The State Court Summary Judgment Order contains detailed facts upon which the State Court

Final Judgments were based, including the Defendant's agreement to sell the Property to the

Plaintiffs and to finance the purchase of the Property.  That the State Court rendered these facts

without examining the Defendant's evidence does not negate their preclusive effect. Only when a court is unable to discern from the record the facts upon which a determination is made may a court refuse to apply collateral estoppel to a state court judgment. *See In re Shuler*, 722 F.2d at 1257-58.

In addition, the Defendant faults Larry Clay for relying on her misrepresentation regarding the status of the title to the Property and invokes the doctrine of caveat emptor. In the Response, she states, "At some point, [Larry] Clay had to undertake some due diligence to determine the state of the title to the [P]roperty rather than relying on the representations of the [Defendant]." (Adv. Dkt. 23 at 4). False representation under § 523(a)(2)(A) requires proof that the other party relied on the misrepresentation. The U.S. Supreme Court has held that the other party's reliance on the false representation must be justifiable, rather than reasonable. *Field v. Mans*, 516 U.S. 59, 60 (1995). The *Second Restatement of Torts* provides that a person is justified in relying on a representation of fact "although he might have ascertained the falsity of the representation had he made an investigation." RESTATEMENT (SECOND) OF TORTS § 540 (Am. Law Inst. 1977). A leading treatise instructs that courts should focus on whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made. 4 COLLIER ON BANKRUPTCY ¶ 523.08[d] (16th ed. 2019). Reliance on a misrepresentation is justifiable "unless its falsity is obvious or there are 'red flags' indicating such reliance is unwarranted." *In re Mercer*, 246 F.3d at 418. Consistent with the State Court's findings, the Court likewise finds that the Plaintiffs were justified in relying on the Defendant's false representation about her ability to transfer title given the Defendant's expertise in real estate matters. In summary, the Plaintiffs have demonstrated that the Defendant made false representations pursuant to § 523(a)(2)(A) that render the State Court Final Judgments nondischargeable.

2.      **Defendant's Actual Fraud**

Because the alleged representation of the Defendant that she could convey "good title" to the Property is the centerpiece of the Plaintiffs' dischargeability claims, there is significant overlap in the elements of proof for a false representation and actual fraud.  For this same reason, the elements of actual fraud pursuant to § 523(a)(2)(A) are similar to the elements of common-law fraud that the State Court contemplated in rendering its determination.  As noted previously, under § 523(a)(2)(A) the Plaintiffs must prove by a preponderance of the evidence that: (1) the Defendant made representations; (2) at the time they were made, the Defendant knew they were false; (3) the Defendant made the representations with the intention and purpose to deceive the Plaintiffs; (4) the Plaintiffs relied on such representations; and (5) the Plaintiffs sustained losses as a proximate result of the representation.  *RecoverEdge L.P.*, 44 F.3d at 1293.  The State Court found, in summary, that: (1) the Defendant represented to the Plaintiffs that she would be able to transfer the Property to them; (2) the Defendant knew of the encumbrances on the Property; (3) the Defendant claimed to own good title, failed to inform the Plaintiffs of the Property's encumbrances, represented that the Property was not subject to liens or judgments when she agreed to sell the Property to the Plaintiffs, admitted to declining to inform the Plaintiffs of the enrolled judgment on the Property, and, in the two (2) years following the transaction, declined to inform the Plaintiffs that the Property had acquired a judgment against it; (4) the Plaintiffs' relied on the Defendant's ability to sell good title and invested $43,000.00 towards the purchase of the Property; and (5) as a result, the Plaintiffs paid $43,000.00 to the Defendant, which she refused to return. (Adv. Dkt. 19-4 at 5-6).  From these findings of fact, the State Court concluded that "the Defendant *intentionally* defrauded the Plaintiffs of forty-three thousand dollars ($43,000.00)."  (Adv. Dkt. 19-3 (emphasis added)).  The Court finds that the State Court Final Judgments are non-

dischargeable under § 523(a)(2)(A) based on the State Court's findings of actual fraud against the Defendant.

### 3.      Summary

The Defendant attempts to assert a narrative that conflicts with the State Court's findings of fact. Although the Griggs Affidavit and the Defendant Affidavit may support the Defendant's position that there was no owner-financed transaction between the Plaintiffs and the Defendant, this Court does not have the power to modify or reverse the findings of fact rendered by the State Court. The State Court Action provided the Defendant with the proper forum to dispute the Plaintiffs' version of the events regarding the attempted sale of the Property. The Adversary is not the appropriate forum to revisit that dispute. In the absence of a genuine dispute, the Plaintiffs are entitled to judgment as a matter of law.

### Conclusion

The Plaintiffs have met their burden of demonstrating that no issue of material fact exists and that they are entitled to judgment as a matter of law. Although the bankruptcy court has the exclusive authority to determine the dischargeability of a debt, it is bound by the principle of collateral estoppel and the *Rooker-Feldman* doctrine to accept the State Court's findings of fact that establish the nondischargeability claims of the Plaintiffs for false representation and actual fraud pursuant to § 523(a)(2)(A). The Court finds that the Plaintiffs are entitled to judgment as a matter of law and that the debt evidenced by the State Court Final Judgments is non-dischargeable.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Summary Judgment Motion is hereby granted.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendant's debt to the Plaintiffs, as evidenced by the State Court Final Judgments, is non-dischargeable in the Bankruptcy Case pursuant to § 523(a)(2)(A).

A final judgment will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##